OPINION
On July 9, 1983, appellant, Candace Bebout, and appellee, Richard Vittling, were married. Two children were born as issue of said marriage namely, Justin Vittling born July 2, 1984 and Ashley Vittling born December 6, 1985. The parties were divorced on February 6, 1991. The final judgment entry decree of divorce was filed on February 19, 1991. Appellant was awarded custody of the children. On October 21, 1996, the parties entered into an agreed judgment entry reallocating custody of Justin to appellee.
On June 23, 1999, appellee filed a motion for reallocation of parental rights and for the termination of companionship. Hearings were held on January 4 and 31, 2000 and February 1, 2000. By judgment entry filed March 14, 2000, the trial court granted the motion and designated appellee the residential parent of both children.
On March 27, 2001, appellant filed a complaint for change of custody. Appellee filed a motion to dismiss on April 3, 2001. By decision filed April 13, 2001, a magistrate dismissed the complaint finding the allegations in the complaint had already been litigated. The magistrate also ordered appellant to pay $200 in attorney fees. Appellant filed an objection to the magistrate's decision. A hearing was held on May 8, 2001. By judgment entry filed same date, the trial court overruled the objection and approved and adopted the magistrate's decision.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ERRED IN NOT HOLDING A HEARING TO DETERMINE IF THERE HAD BEEN A CHANGE IN CIRCUMSTANCES.
 II THE TRIAL COURT ERRED IN DETERMINING THERE HAD NOT BEEN A CHANGE IN CIRCUMSTANCES.
 III THE TRIAL COURT ERRED BY ORDERING APPELLEE TO PAY ATTORNEY FEES.
 I, II
In these assignments of error, appellant claims the trial court erred in not holding a hearing and in not finding a change of circumstances to justify a change of custody. We disagree.
The trial court has broad discretion in custody proceedings. Trickeyv. Trickey (1952), 158 Ohio St. 913. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Appellant filed a complaint with an affidavit in support of the reallocation of parent rights on March 27, 2001. Said affidavit set forth the following changed circumstances, alleging specific incidents and dates after the trial court's March 14, 2000 decision:
 On March 16, 2000, Ashley was arrested and charged with shoplifting at Drugmart, while in the care and control of the Defendant.
 On March 17, 2000, the Defendant physically accosted both Justin and Ashley. Justin's mouth was bleeding and Ashley had bruises about her body. The children sought refugee (sic) with Gail Huff nka Glass. Defendant pursued charges against Justin. Justin was later charged and found delinquent of domestic violence while in his care.
 In November of 2000 while in the care and control of the Defendant, Justin was arrested and charged with Possession of Marijuana on school premises. To date, he is on probation with Andy Betro and continues to drop dirty urines while in the care and control of the Defendant.
 In February 2001, Justin pleaded with me `to get me out of Jackson High School, I feel like I'm going insane . . . Mom you don't know what's going on in my head.'
 Ashley, over the past six (6) months, has undergone significant weight loss. She is exhibiting signs of anorexia. Defendant refuses to acknowledge any possible problems with her health. I believe my daughter needs immediate medical attention to address these issues.
R.C. 3109.04 governs the award of parental rights and responsibilities. Subsection (A) requires a hearing on the allocation of parental rights:
 In any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, upon hearing the testimony of either or both parents and considering any mediation report filed pursuant to section 3109.052 of the Revised Code and in accordance with sections 3109.21 to 3109.36
of the Revised Code, the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage.
Subsection (E)(1)(a) states the following:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
As a threshold issue, it is the trial court's duty to determine if in fact a change of circumstances has occurred. In the case sub judice, both the magistrate and the trial court concluded the allegations in appellant's affidavit were similar to those litigated a year ago during the previous hearings (January 4 and 31, 2000 and February 1, 2000.) The trial court filed extensive findings of fact and conclusions of law on March 14, 2001.[1] The findings of fact specifically addressed the issue of Justin's juvenile and discipline problems, noting the October 26, 1996 change of custody to appellee was because appellant agreed Justin was `. . . (G)etting out of hand.' See, Finding of Fact No. 2. The trial court found appellant had frequently counseled Justin not to listen to appellee or his stepmother and "does very little to reinforce the rules and conduct regulations set forth by the childrens' father and, in fact, does much to undermine his efforts." See, Finding of Fact No. 11. The trial court concluded appellant "has not assumed the role of a mother, but, rather, assumed the role of a friend." See, Conclusion of Law No. 5.
On the issue of the custody of Ashley, there was extensive evidence presented during the 2000 hearings regarding the claims of sexual abuse against appellant's husband, "Skip" Bebout, and the recantation of those claims. Ashley's credibility was at issue because it was controverted by Justin and Ashley's court appointed psychologist, Dr. Robin Tenner. Dr. Tenner opined that Ashley `. . . (A)ppears to have a highly unusual relationship with Mr. Bebout that is quite romanticized and suggests a lack of awareness of boundaries for both Ashley and Mr. Bebout.'[2]
See, Finding of Fact No. 21. In order to resolve these conflicts, the trial court found "that sufficient doubt exists with regard to this issue to justify restrictions between them in the interest of protecting this child." See, Conclusion of Law No. 14. Ashley's claims of physical abuse were also discussed during the 2000 hearings. See, Finding of Fact No. 22.
After receiving the recommendation that neither parent should have custody, the trial court found appellee's home was the "lesser of the two evils":
 To place Ashley and Justin in the home of Richard and Lori Vittling certainly is not an ideal situation. In fact, the Guardian ad Litem recommends that the entire case be turned over to Child Protective Services. The situations in the Vittling home certainly is an intense one. There is no doubt that Ashley is placed in that home against her wishes. There is also no doubt that Justin has been uncontrollable at times-resulting in excessive discipline on the part of Mr. Vittling. Mr. Vittling acknowledges that during his marriage to Ms. Bebout he was an alcoholic and abusive to her. In fact, his alcoholism caused Lori Vittling to abandon him for a period of 1-1/2 months. The situation in the Vittling home digressed so far that the Stark County Department of Human Services invoked the help of its `First Unit'. The First Unit is the last effort made by the Department of Human services prior to removing children from a home.
 Despite all of these problems, it is the Vittlings, Richard and Lori, who have come forward making the greater effort to act in the best interest of these children. Despite the negative and, at times, violent reactions on the part of Ashley, they have consistently maintained the need to protect her from perceived or actual sexual abuse. They have acknowledged the problems in their family by accepting the services offered by the Department of Human Services, and Richard Vittling has shown an ability to abstain from the use of alcohol for a significant period of time. The Vittlings put into place a plan of action to help Justin with his schooling. They taught him how to study, obtained tutors and Justin has experienced some improvement in his schooling as well as in his overall behavior. They have made consistent efforts to improve the childrens' behavior, but, as indicated previously, their efforts have been undermined by the mother.
See, Conclusion of Law No. 16.
We note that Magistrate Michael Howard was initially involved with Ashley's temporary placement in appellee's home prior to the trial court's final determination. See, Magistrate's Order filed July 28, 1999. Further, the trial court's March 14, 2000 entry discloses a vast knowledge of the issues surrounding custody and the Stark County Department of Job and Family Services.
Although appellant's March 27, 2001 affidavit does allege incidents which occurred after any other hearings, it does in fact still center on Justin's unruliness and Ashley's dubious credibility. Based upon these facts and the difficult choices the trial court made, we find no abuse of discretion in denying an evidentiary hearing and finding no changed circumstances. Justin will be eighteen years of age in eight months and clearly there is no changed circumstances. Ashley will be eighteen in 2003 and demonstrated a lack of credibility and admitted to manipulating the facts to escape punishment. See, Finding of Fact No. 19 and Conclusion of Law No. 14.
We might comment that "enough change is in fact enough." The battleground formulated by appellant has caused the change of custody. By her own actions, appellant was the "architect of her own demise." It would appear, given the tone of the guardian ad litem opinion and the fact that the Stark County Department of Job and Family Services is involved with appellee's family, that the best choice might be neither parent.
Assignments of Error I and II are denied.
 III
Appellant claims the trial court erred in assessing attorney fees against her. We agree.
By judgment entry filed May 8, 2001, the trial court approved and adopted the magistrate's April 13, 2001 decision wherein the magistrate ordered appellant to pay $200 for attorney fees to appellee "for filing motion without merit."
Appellant argues the trial court did not follow statutory authority in awarding the fees. We agree. Further, appellee concedes "certain procedures must be followed" and "concurs that he did not request the award of attorney fees." Appellee's Brief at 5.
Upon review, we find the trial court erred in assessing attorney fees against appellant.[3]
Assignment of Error III is granted.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is affirmed in part and reversed in part.
Hon. W. Scott Gwin, P.J. Hon. Sheila G. Farmer, J. Hon. John W. Wise, J. concur.
[1] Appellant had filed a complaint for change of custody on December 5, 2000. The affidavit to this complaint cited vague complaints and set forth no dates. The complaint was subsequently dismissed for failure "to state sufficient grounds to justify the relief sought." See, Judgment Entry filed March 13, 2001.
[2] Mr. Bebout is twenty-five years old, some twenty-seven years younger than appellant.
[3] It appears the parties are of moderate means and should be using their funds to get help for their children as opposed to battling in court.